[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Housing Authority of Norwalk brought this summary process action against Mary Harris, Mary Harris, Jr., (aka Dorothy Harris) Kim Harris and Parks Harris, Jr. The case was returnable to the court on September 25, 1990 and alleged serious nuisance in violation of Connecticut General Statute 47a-11(g).
Mary Harris appeared through counsel for trial on October 31, 1991.
The parties agree that Mary Harris entered into a written lease on September 1, 1983 for premises known as 23-3F Roodner Court. The premises are owned by the Housing Authority of Norwalk. (Exhibit "A"). On September 12, 1989 she executed a recertification application listing all the parties as member's of the family household. (Exhibit "B"). On January 23, 1991 she executed a recertification which omitted Kim, who had married, but which still included Mary Jr. (Exhibit "C")
Mary Harris, Jr. was arrested for illegal sale of drugs on March 1, 1990. The sale took place on the Housing Authority premises at 261 Ely Avenue, Roodner Court and not at the defendants' apartment. This location is across the street from 23-3F Roodner Court. As a result of this arrest the Housing Authority brought the instant action.
In C.G.S. 47a-1(g) "premises" is defined as ". . . a dwelling unit and the structure of which it is a part and facilities and appurtenances therein and grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant."
Connecticut General Statute 47a-15 permits a landlord to bring an action to evict based on serious nuisance. Among other things, "serious nuisance" means "(C)conduct which presents an immediate CT Page 9936 and serious danger to the safety of other tenants or the landlord, or (D) using the premises for. . .the illegal sale of drugs."
Pursuant to C.G.S. 47a-11(g) a tenant must "conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a . . .serious nuisance, as defined in section 47a-15." The plaintiff herein alleges that Mary Harris, Jr.'s actions constituted a serious nuisance. However, the nub of this case lies in the last sentence of 47a-15
which provides as follows:
 If the landlord elects to evict based upon an allegation, pursuant to subsection (g) of section 47a-11, that the tenant failed to require other persons on the premises with his consent to conduct themselves in a manner that will not constitute a serious nuisance, and the tenant claims to have had no knowledge of such conduct, then, if the landlord establishes that the premises have been used for the illegal sale of drugs, the burden shall be on the tenant to show that he had no knowledge of the creation of the serious nuisance.
The evidence introduced at trial supports the following facts. On March 1, 1990 Mary Harris, Jr. was arrested for the sale of narcotics in violation of section 21a-277a of the Connecticut General Statutes. Not only did the officers involved in the surveillance and subsequent arrest testify as to the underlying facts of the arrest, but the plaintiff furnished the court with certified records of the judgment in the case in which Mary Harris, Jr. received a sentence of three years on March 16, 1990 as a result of a voluntary plea. (Exhibit "G") The court finds that the plaintiff has met its burden of proof on the issue of the existence of a serious nuisance.
Mary Harris, Jr. was, and still is, listed as a tenant of the apartment with her mother's knowledge. Mrs. Harris testified that she had asked Gloria Seed of the Housing Authority to remove her daughter from the lease at the time she requested that Kim be removed. Mrs. Seed could not recall a conversation pertaining to Mary but recalled one wherein Mrs. Harris requested Kim's removal because of Kim's marriage. The Housing Authority requires a letter from an occupant's new landlord in order to remove that occupant from the lease. Mrs. Harris agreed that she knew of this requirement but contends that Mary, Jr. was living with her boyfriend, Edward, without the knowledge of Edward's landlord, and she could not obtain such a letter. Mrs. Harris did not request one of Edward himself. Mrs. Harris and her two daughters, Kimberly Hackney and Patricia Burden, testified that Mary, Jr. moved out in 1988 after her mother refused to permit Edward to stay overnight at the Roodner Court CT Page 9937 apartment. All three testified that Mrs. Harris required her children to conform to certain standards of behavior if they wished to reside with her.
The plaintiff suggests that Mrs. Harris did not actively pursue the removal of Mary, Jr. from the lease because it would have caused her to be assigned a smaller apartment. This is speculation only, and no evidence was adduced to that effect.
Despite a succession of living quarters, Mary, Jr. returned to her mother's apartment for overnight stays and was seen by her sisters there. In May, 1989 she was arrested for possession of narcotics, although this was apparently unknown to her sisters and mother. However, her sister Kim testified that she heard "from people that talk outside" that Mary, Jr. had been arrested. Kim spoke with her mother about this. Mrs. Harris testified that she asked Mary, Jr. whether or not she was using drugs because sometimes she noticed her daughter was "talky" and "jolly", but her daughter denied such use. Patricia Burden testified that between 1989 and 1991 she could have learned that her sister was involved with drugs. Both sisters were understandably evasive about their sister's activities and places of residence with Edward. They saw her at very few of these premises, and they were not specific as to dates. She apparently slept over at the Roodner Court apartment on occasion. Although there was ample evidence that Mary, Jr. moved from place to place, there seem to have been no times when she was not in contact with various members of her family nor when she did not return to Roodner Court as her home base.
Mary Jr. was paroled in June, 1990 when she was released from prison. At the time of her arrest, she had given police the Roodner Court address. When she was placed on Supervised Home Release (SHR) in June, Officer Emmalita was assigned to her case. Prior to her release Mary, Jr. had called her mother to request her mother's sponsorship. As a parole officer with sixteen years of experience, Emmalita speaks with the proposed sponsor and asks that person whether she is ready to take the subject into her home. To that end, he made a telephone call to Mary Harris and determined that Mary Harris was willing to accept sponsorship of her daughter. Subsequently Officer Emmalita wrote to Mary, Jr. at the Roodner Court address to tell her when to report to his office. He went on a home visit on December 19, 1990 and spoke with Mary, Jr. there. He testified that Mary, Jr. was living there during SHR. In a January 30, 1991 telephone call, he spoke with Mrs. Harris who told him that Mary, Jr. was not living there, but she never discussed rescinding her sponsorship. On February 2, 1991 he called the apartment and spoke with Mary, Jr. and advised her to turn herself in. He wrote in his notes "(W)ill not tell me where she is at." Mary, Jr. failed to enter a program as her Parole Officer and mother wished, so she returned to Niantic. CT Page 9938
In June 1991 Parole Officer Clifford was assigned to Mary, Jr's case upon her release. First she gave him the address of a sister in Monterey Place. However, on June 19, 1991 he saw her walking on Ely Avenue. He gave her a ride and she indicated that she was living with her mother at Roodner Court. On July 10 she claimed her residence was the same. On July 11 at 11 a.m. he telephoned the apartment, and she said that she "just got up. " Since Mary, Jr. was not requesting or following through on her visits to his office, he made a home visit with Officer Emmalita on September 4, 1991. Mrs. Harris indicated then that Mary, Jr. was "in and out" and did not always stay at Roodner Court; she further indicated she did not know Mary, Jr.'s current whereabouts. On September 17, Mary was at the apartment to receive a telephone call from Clifford. On September 25 the two parole officers made another visit to Roodner Court. Mrs. Harris was reportedly in Florida but one of Mary's sisters was there, and the officers instructed her to have Mary, Jr. turn herself in by October 11, 1991 or face an escape charge. On October 23 Mary, Jr. was remanded on Ely Avenue and transported to prison.
Mrs. Harris was unable to bear her burden of proof under47a-15, namely that she did not know of Mary, Jr.'s involvement with drug use and selling and had "no knowledge of the creation of the serious nuisance." She claimed Mary, Jr. had none of the trappings commonly associated with drug dealers, i.e. jewelry, cash, clothing. However, these are not foolproof signs but mere indicia. Mrs. Harris did not actively seek out facts that would have given her a realistic picture of her daughter's activities. She contented herself with her daughter's denial of drug use. Once she knew of Mary, Jr.'s arrest for sale, she apparently made no further inquiry but permitted Mary, Jr. to return to Roodner Court for purposes of parole sponsorship. She also claims she did not read through her daughter's conditions of probation so did not know that sponsorship meant that she was providing her daughter with a home. Deliberate failure to learn does not insulate one from the consequences of lack of knowledge. Sometime after March 1, 1991, Mrs. Harris certainly knew that Mary, Jr. had been convicted of sale of narcotics and knew that Mary, Jr. had failed to live up to the probationary conditions of her first release. She knew that Mary, Jr. was failing to live up to the conditions of her second release. Despite her denial of telling the parole officers that her daughter lived with her, she allowed them to have the impression that it was the appropriate place for them to call and visit Mary, Jr. She herself testified that, if Mary, Jr. would live up to her standards, she could return to live with her. "What mother would tell her child she was not welcome?" she asked.
There is no doubt that Mrs. Harris sought to steer her daughter from drugs. None of her other children were involved with drugs and she was a good tenant of the Housing Authority. However, by not CT Page 9939 following through on removing Mary, Jr. from the lease and by permitting her to return to Roodner Court at will, so long as Edward did not stay overnight, she "failed to require" Mary, Jr. "to conduct herself in a manner that (would) not constitute a serious nuisance." It was the availability of the Roodner Court apartment that drew Mary, Jr. to Roodner Court again and again.
Unfortunately her testimony and that of her two daughters was evasive and non-responsive when pressed about Mary, Jr.'s residences, her presence at Roodner Court and their knowledge of her activities.
The defendant filed six special defenses. The court finds that the defendant failed to meet her burden of proof regarding each. The first claimed inadequate specificity of notice in the language of the notice to quit. The plaintiff clearly showed that sale of drugs had occurred on the premises. Sale of drugs and maintenance of a serious nuisance is good cause to evict where the defendant could have reasonably foreseen and prevented the misconduct. Further, the defendant directs the court to find that the plaintiff did not give thirty days notice of the termination of the lease pursuant to Paragraph 11 b of the lease, and the right to a grievance procedure set forth in paragraph 11 c. However, the defendant ignores the language of Paragraph 11 b that requires a reasonable amount of notice time commensurate with the exigencies of the situation in a case of creation or maintenance of a threat to the health or safety of other residents. Similarly, a KAPA notice and grievance procedure is not required where a tenant has caused a serious nuisance. As to the second special defense the court finds that, although the complaint belongs to the minimalist school, it states a cause of action in paragraphs 6 and 7.
For the foregoing reasons the Court finds judgment for the plaintiff against Mary Harris. The court enters judgment against Parks Harris, Jr. and Mary Harris, Jr. by default for failure to appear. The case against Kim Harris is dismissed, as she is no longer a resident of apartment 23-3F, Roodner Court.
LEHENY, J.